**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Tiffany C. Tyner, | ) | No. CV 19-489-TUC-LAB |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). (Doc. 1, p. 1)

The Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636(c) having received the written consent of both parties. *See* FED.R.CIV.P. 73; (Doc. 13)

The ALJ in this case failed to give specific and legitimate reasons for discounting the opinion of the treating physician. The case is remanded for payment of benefits.

PROCEDURAL HISTORY

On May 2, 2016, Tyner constructively filed an application for supplemental security income pursuant to Title XVI of the Social Security Act. (Tr. 18) She alleged disability beginning on January 1, 2015, due to anxiety, depression, and bipolar disorder. (Tr. 18, 207, 232, 237)

Tyner's application was denied initially and upon reconsideration. (Tr. 18) She requested review and appeared with counsel at a hearing before Administrative Law Judge

(ALJ) Yasmin Elias on August 20, 2018. (Tr. 33)  At the hearing, Tyner amended her onset date to January 6, 2017. (Tr. 37-38)  In her decision, dated September 19, 2018, the ALJ found, based on testimony by a vocational expert, that Tyner was not disabled because there are jobs that she could perform considering her age, education, work experience, and residual functional capacity (RFC). (Tr. 25-26)  Tyner appealed, but on August 9, 2019, the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 1-3)  Tyner subsequently filed this action appealing that final decision. (Doc. 1)

Claimant's Work History and Medical History

Tyner is a high school graduate. (Tr. 25)  Beginning in 2000, she worked for eight years as a stock clerk for Banana Republic. (Tr. 43)  She subsequently worked as a stock clerk and cashier for Gymboree. (Tr. 43)  Tyner graduated from cosmetology school in 2014, but she did not sit for her state licencing exam due to increased mental health symptoms. (Tr. 44, 50)

At the hearing before the ALJ, Tyner explained that she cannot work because she has anxiety attacks when she is confined with people in close quarters. (Tr. 39)  She has these attacks three or four times each week. (Tr. 39)  They last two or three hours if she is unable to call her counselor or someone to calm her down. (Tr. 39)  Tyner stated that she takes her medications as prescribed, but she does not think they are working. (Tr. 40)

On an average day, she takes her dog out if it is not too hot. (Tr. 40)  Usually she goes to La Frontera where they have "classes, like bipolar class, helpful eating, some arts and crafts I participate in." (Tr. 40)  Taking the bus is difficult for her. (Tr. 41)  If she does take the bus, she stays at the back because of her panic attacks. (Tr. 41)  Tyner also has problems with depression. (Tr. 42)  She feels her medications are not helping and has asked her doctor to change them. (Tr. 42)  Occasionally, her son will take her to lunch, but sometimes she won't open the door for him because she is too upset. (Tr. 42-43)

Susan Moranda testified at the hearing as a vocational expert. (Tr. 18); (Tr. 49)  Moranda testified that a person with Tyner's age, education, and work history, who is "able to meet the basic mental demands of unskilled work, including the ability to understand,

remember, and carry out simple instructions, make simple, work-related decisions, respond appropriately to supervision and interact with coworkers in a public setting, but in an environment that does not require more than occasional superficial interactions with the public and coworkers and where the individual is capable of dealing with minor changes in work setting," would not be able to perform Tyner's past work as a stock checker. (Tr. 50-51) Such a person could, however, work as a landscaper assistant, DOT #406.687-010, dishwasher, DOT #318.687-018, or hand packager, DOT #920.587-018. (Tr. 52)

Moranda further testified that an unskilled worker could be off-task at most 9-10% of the day and remain employed. (Tr. 52-53) Such a worker could be absent no more than one time per month. (Tr. 53)

*Medical Record*

The medical record documents emergency room treatment in 2016 on March 27, April 17, May 27, and December 20 due to Tyner's anxiety, suicidal ideation, and alcohol abuse. (Tr. 721, 749, 762, 894) At the hearing, Tyner explained that when she started experiencing mental health problems, she "turned to [alcohol] thinking it would fix me and make me feel better." (Tr. 44) She maintains that she stopped abusing alcohol when she started treatment at La Frontera. (Tr. 45)

In August of 2016, Susan Kaz, Psy.D., reviewed the medical record for the disability determination service and offered an opinion of Tyner's mental impairment. (Tr. 71) Kaz considered the diagnoses of anxiety disorder and substance abuse disorder. (Tr. 68) She evaluated Tyner's "B" listing criteria, which gauge the severity of her limitations. *See* 20 C.F.R. § 404.1520a(c)(3). Kaz found that Tyner has "mild" restrictions of activities of daily living; "moderate" difficulties in maintaining social functioning; "moderate" difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. (Tr. 68) Kaz further opined that the medical evidence did not establish the presence of the "C" criteria, which are an alternative gauge of the extent of her functional limitations. (Tr. 68)

In October of 2016, Tawnya Brode, Psy.D., reviewed the medical record for the disability determination service and offered an opinion of Tyner's mental impairment. (Tr. 83-85) Brode considered the diagnoses of anxiety disorder and substance abuse disorder. (Tr. 83) She evaluated Tyner's "B" listing criteria, which gauge the severity of her limitations. *See* 20 C.F.R. § 404.1520a(c)(3). Brode found that Tyner has "mild" restrictions of activities of daily living; "moderate" difficulties in maintaining social functioning; "moderate" difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. (Tr. 83) Brode further opined that the medical evidence did not establish the presence of the "C" criteria. (Tr. 83-84)

Brode completed a mental residual functional capacity assessment. (Tr. 86) She concluded that Tyner's ability to understand and remember detailed instructions, ability to carry out detailed instructions, ability to maintain attention and concentration for extended periods, ability to work in coordination with or in proximity to others without being distracted by them, ability to complete a normal workday and workweek and perform at a consistent pace, ability to interact appropriately with the general public, ability to interact appropriately with supervisors, ability to get along with coworkers, and ability to respond appropriately to changes in the work setting are moderately limited. (Tr. 86-88)

On January 6, 2017, the amended disability onset date, Tyner was given a psychological evaluation by Janice Hanlon-Toth, M.D., at La Frontera. (Tr. 1049) When called to the appointment, Tyner was "outside with a panic attack." (Tr. 1049) When called back in, she "became extremely agitated, histrionic, [and] disruptive [with] loud sobbing." (Tr. 1049) Hanlon-Toth noted that Tyner "[h]as been on a long list of meds for attempted mood stabilization with reported adverse effects from nearly all." (Tr. 1049) Hanlon-Toth diagnosed "borderline personality disorder; persistent mood (affective) disorder, unspecified; and alcohol use unspecified with unspecified alcohol-induced disorder." (Tr. 1052)

On February 14, 2017, Tyner received emergency room treatment for "[suicidal ideation] with plan to cut her wrists." (Tr. 914) She was treated with intramuscular Ativan injection. (Tr. 914) A few hours later, she was unable to recall telling the emergency room nurse of her

1    suicidal ideation.  (Tr. 914)  Tyner was diagnosed with borderline personality disorder,

2    unspecified depressive disorder, and history of bipolar disorder.  (Doc. 921)

3          On March 7, 2017, Tyner was given a clinical assessment at La Frontera for depression

4    and anxiety.  (Tr. 1183)  Her diagnoses were listed as "borderline personality disorder";

5    "persistent mood (affective) disorder, unspecified"; and "alcohol  use, unspecified with

6    unspecified alcohol-induced disorder."  (Tr. 1183)  Her symptoms were listed as "anxiety . . .

7    cannot be around people in public places," 1-3 times per day; depression, 1-3 times per day;

8    "mood swings-labile, verbally and physically aggressive," 1-3 times per day. (Doc. 1183)  On

9    March 11, 2017, Tyner was treated in the emergency room for anxiety.  (Tr. 929)  Her primary

10   diagnosis was listed as tachycardia.  (Tr. 932)

11         The medical record contains treatment notes from treating physician Robert Cicarell,

12   M.D., at La Frontera, between March 22, 2017 and March 26, 2018 describing 13 office visits.

13   (Tr. 1056, 1059, 1063, 1066, 1069, 1072, 1075, 1078, 1081, 1084, 1086, 1218, 1240)  On April

14   18, 2017, Tyner was "hysterically crying saying that the medications are not helpful."  (Doc.

15   1059)  On May 19, 2017, Tyner reported "I still don't feel right."  (Doc. 1063)  Cicarell

16   diagnosed borderline personality disorder; bipolar II disorder; and alcohol use, unspecified with

17   unspecified alcohol induced disorder.  (Doc. 1065)  On June 23, 2017, Tyner stated, "I feel

18   moody, depressed." (Doc. 1066) On June 30, 2017, Tyner felt "marginally better since Latuda

19   was increased. . . ." (Doc. 1069)  On July 27, 2017, Tyner explained, "I'm feeling anxious and

20   restless."  (Tr. 1072)   On August 14, 2017, Tyner stated, "I'm a little better but I'm still

21   irritable."  (Tr. 1075)  On September 12, 2017, Tyner reported she was going to have thyroid

22   surgery. (Tr. 1078)  She had "[n]o overt signs of marked anxiety or depression."  (Tr. 1078)

23   On January 11, 2018, Tyner reported "I'm so happy that I was able to keep my emotional

24   support dog."  (Tr. 1086)  On February 8, 2018, Tyner reported, "I have no ambition."  (Tr.

25   1218)  Her mood was "[not] so good."  (Tr. 1218)  On March 26, 2018, Tyner was "crying,

26   lying on the floor."  (Tr. 1240)  Cicarell adjusted her medications.  (Tr. 1240)

27         The record contains a Medical Source Statement from Cicarell dated July 18, 2017.  (Tr.

28   888-891)  Cicarell opined that Tyner has multiple functional limitations in the categories of

1   Understanding and Memory, Sustaining Concentration and Persistence, Social Interaction, and

2   Adaptation. *Id*. Specifically, she would be compromised for 30% of an 8-hour workday in the

3   following areas: the ability to maintain attention and concentration, the ability to perform

4   activities within a schedule, the ability to work in coordination or proximity to others, the

5   ability to complete a normal workday and workweek, the ability to respond appropriately to

6   supervisors, the ability to get along with co-workers, and the ability to travel in unfamiliar

7   places or use public transportation. *Id*. He opined that Tyner's limitations began April 19,

8   2016. (Tr. 890) Cicarell stated that his opinions are based on his progress and office notes. *Id*.

9   Cicarell further opined that Tyner would be absent from work for five or more days each month

10  "due to the increase in symptoms when [she] is around people . . . ." He opined that due to the

11  entire combination of her limitations, Tyner would be off task "more than 30%" of the workday

12  "due to the symptom of anxiety that Tiffany experiences when around people." (Tr. 891) He

13  concluded that "[s]he could not maintain gainful employment." (Tr. 891)

14

15          CLAIM EVALUATION

16          Social Security Administration (SSA) regulations require that disability claims be

17  evaluated pursuant to a five-step sequential process. 20 C.F.R. § 416.920. The first step

18  requires a determination of whether the claimant is engaged in substantial gainful activity. 20

19  C.F.R. § 416.920(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id*.

20          If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step

21  two, which requires a determination of whether the claimant has a severe impairment or

22  combination of impairments. 20 C.F.R. § 416.920(a)(4). In making a determination at step two,

23  the ALJ uses medical evidence to consider whether the claimant's impairment significantly

24  limits or restricts his or her physical or mental ability to do basic work activities. *Id*. If the ALJ

25  concludes the impairment is not severe, the claim is denied. *Id*.

26          Upon a finding of severity, the ALJ proceeds to step three, which requires a

27  determination of whether the impairment meets or equals one of several listed impairments that

28  the Commissioner acknowledges are so limiting as to preclude substantial gainful activity. 20

1    C.F.R. § 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1.  If the claimant's impairment meets

2    or equals one of the listed impairments, the claimant is presumed to be disabled, and no further

3    inquiry is necessary.  *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017).  If the claimant's

4    impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

5          The fourth step requires the ALJ to consider whether the claimant has sufficient residual

6    functional capacity (RFC)[1] to perform past relevant work.  20 C.F.R. §  416.920(a)(4).  If yes,

7    then the claim is denied.  *Id.*  If the claimant cannot perform any past relevant work, then the

8    ALJ must move to the fifth step, which requires consideration of the claimant's RFC to perform

9    other substantial gainful work in the national economy in view of the claimant's age, education,

10   and work experience.  20 C.F.R. § 416.920(a)(4).

11

12         The ALJ's Findings

13         At step one of the disability analysis, the ALJ found Tyner "has not engaged in

14   substantial gainful activity since January 6, 2017, the amended alleged onset date. . . ."  (Tr. 20)

15   At step two, she found Tyner "has the following severe impairments: anxiety disorder and

16   substance addiction dependence. . . ."  (Tr. 20)

17         At step three, the ALJ found Tyner "does not have an impairment or combination of

18   impairments that meets or medically equals the severity of one of the listed impairments in 20

19   CFR Part 404, Subpart P, Appendix 1 . . . ."  (Doc. 21)

20         The ALJ then analyzed Tyner's residual functional capacity (RFC).  She found that:

21         [T]he claimant has the residual functional capacity to perform a full range of
           work at all exertional levels but with certain nonexertional limitations: able to
22         meet the basic mental demands of unskilled work, including the abilities to
           understand, remember and carry out simple instructions, make simple work
23         related decisions, respond appropriately to supervision and interact with
           coworkers and the public, in an environment that does not require more than
24         occasional superficial interactions with the public and coworkers.  The claimant
           is capable of dealing with minor changes in work setting.
25

26

27   _____

28         [1]  Residual functional capacity is defined as that which an individual can still do despite
     his or her limitations.  20 C.F.R. § 416.945.

(Tr. 22)

At step four, the ALJ found that Tyner is unable to perform any past relevant work.  (Tr. 24)  At step five, the ALJ found, based on the testimony of the vocational expert, that considering her age, education, work experience, and residual functional capacity, Tyner could work as a landscaper assistant, DOT #406.687-010, dishwasher, DOT #318.687-018, or hand packager, DOT #920.587-018. (Tr. 25-26)  Accordingly, the ALJ found that Tyner is not disabled.

## STANDARD OF REVIEW

To qualify for disability benefits the claimant must demonstrate, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months.  42 U.S.C. § 1382c (a)(3)(A).  "An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her] or whether [she] would be hired if [she] applied for work."  42 U.S.C. § 1382c (a)(3)(B).

The findings of the Commissioner are meant to be conclusive.  The decision to deny benefits "should be upheld unless it contains legal error or is not supported by substantial evidence."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  It is "more than a mere scintilla but less than a preponderance."  *Id.*

"Where evidence is susceptible to more than one rational interpretation, the [Commissioner's] decision should be upheld."  *Orn*, 495 F.3d at 630.  "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  *Id.*

1

2        Discussion

3        Tyner argues that the ALJ committed legal error when she improperly discounted the

4   opinion of her treating physician, Robert Cicarell.   *See Orn v. Astrue*, 495 F.3d 625, 631 (9th

5   Cir. 2007).   Tyner is correct.

6        "Because treating physicians are employed to cure and thus have a greater opportunity

7   to know and observe the patient as an individual, their opinions are [ordinarily] given greater

8   weight than the opinions of other physicians." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir.

9   1996). If the treating physician's opinions are uncontradicted, the ALJ may disregard them only

10  after giving clear and convincing reasons for doing so.  *Id*.  The ALJ may reject the treating

11  physician's contradicted opinion only if she sets forth "specific and legitimate reasons supported

12  by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1996)

13  (punctuation modified).

14       In this case, Cicarell's opinion of disability is contradicted by the medical opinion of the

15  non-examining state agency physician, Tawnya Brode.  Accordingly, the ALJ's decision to

16  discount Cicarell's opinion must be supported by "specific and legitimate reasons supported by

17  substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996)

18  (punctuation modified);  *see also Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006)

19  (applying the "specific and legitimate" test); *Bowers-Crawford v. Acting Comm'r of Soc. Sec.*

20  *Admin.*, 291 F. Supp. 3d 912, 918-921 (D. Ariz. 2017)  (same).  "This can be done by setting

21  out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her]

22  interpretation thereof, and making findings." *Orn v. Astrue*,  495 F.3d 625, 632 (9th Cir. 2007).

23  "The ALJ must do more than offer [her] conclusions."  *Id*.  "[She] must set forth [her] own

24  interpretations and explain why they, rather than the doctor['s], are correct."  *Id*.

25       If the treating source's opinion "is well-supported by medically and acceptable clinical

26  and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence

27  in [the] case record," it must be given "controlling weight."  20 C.F.R. § 416.927(c)(2).  If the

28  treating source's opinion is not given controlling weight, the ALJ must decide the amount of

1    weight to give the opinion after considering factors such as the length, nature, and extent of the

2    treating relationship; the supportability and consistency of the opinion; and the degree of

3    medical specialization possessed by the treating source.  20 C.F.R. § 416.927(c)(2);  *see also*

4    *Sameena, Inc. v. U. S. Air Force*, 147 F.3d 1148, 1153 (9th Cir. 1998) ("[A] federal agency is

5    obliged to abide by the regulations it promulgates.").  "In many cases, a treating source's

6    medical opinion will be entitled to the greatest weight and should be adopted even if it does not

7    meet the test for controlling weight."  SSR 96-2p, 1996 WL 374188 at *4 (July 2, 1996).  In

8    sum, the ALJ must "give good reasons" for the weight given to the treating source's opinion.

9    20 C.F.R. § 416.927(c)(2).

10          In this case, Tyner's treating physician Cicarell provided a medical opinion of the extent

11   of her functional limitations in his Medical Source Statement dated July 18, 2017.  (Tr. 888-

12   891)   He opined that Tyner has multiple functional limitations in the categories of

13   Understanding and Memory, Sustaining Concentration and Persistence, Social Interaction, and

14   Adaptation.  *Id*.  Specifically, she would be compromised for 30% of an 8-hour workday in the

15   following areas:  the ability to maintain attention and concentration, the ability to perform

16   activities within a schedule, the ability to work in coordination or proximity to others,  the

17   ability to complete a normal workday and workweek,  the ability to respond appropriately to

18   supervisors, the ability to get along with co-workers,  and the ability to travel in unfamiliar

19   places or use public transportation.  *Id*.  Cicarell stated that his opinions are based on his

20   progress and office notes.  (Tr. 890)  Cicarell further opined that Tyner would be absent from

21   work for five or more days each month "due to the increase in symptoms when [she] is around

22   people . . . ."  He explained that due to the entire combination of her limitations, Tyner would

23   be off task "more than 30%" of the workday "due to the symptom of anxiety that Tiffany

24   experiences when around people."  (Tr. 891)  He concluded that "[s]he could not maintain

25   gainful employment."  (Tr. 891)

26          The ALJ gave Cicarell's opinion "little weight" because "it is conclusory, providing very

27   little explanation of the evidence relied on in forming his opinion."  (Tr. 24)  Instead, she

28   "adopt[ed] the findings of the State agency medical consultant Tawnya Brode" because "they

1   are consistent with the evidence received subsequent to her review." (Tr. 24) The court finds

2   that the ALJ's stated reasons for rejecting the opinion of Tyner's treating physician are not

3   "specific and legitimate." *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1996) (punctuation

4   modified).

5         The ALJ's decision reads in pertinent part as follows:

6           I give the opinion of Robert Cicarell, M.D., (Ex. 9F) little weight because it is
    conclusory, providing very little explanation of the evidence relied on in forming

7           his opinion.  Moreover, the opinion appeared to rely quite heavily on the
    subjective report of symptoms and limitations provided by the claimant, i.e., "due

8           to the increase in symptoms when around people, this member reports not being
    able to be around people" (Ex. 9F/6).

9

10  (Tr. 25) The ALJ stated first that she gave Cicarell's opinion "little weight" because "it is

11  conclusory, providing very little explanation of the evidence relied on in forming his opinion."

12  Ordinarily, an ALJ may discount the opinion of a treating physician if that opinion is

13  "conclusory, brief, and unsupported by the record as a whole." *Batson v. Comm'r of Soc. Sec.*

14  *Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also* (Doc. 24)  (citing *Tonapetyan v. Halter*,

15  242 F.3d 1144, 1149 (9th Cir. 2001)  ("[A]n ALJ need not accept a treating physician's opinion

16  that is conclusory and brief and unsupported by clinical findings.").  The court finds, however,

17  that Cicarell's opinion is none of those things.

18        Cicarell's opinion does not simply conclude that Tyner is disabled without further

19  elaboration.  He specifies which functional limitations are present, and to what degree, in 20

20  different areas.  (Tr. 888-891) For example, Tyner's "ability to remember locations and work

21  like procedures," "ability to ask simple questions or request assistance," and her "ability to be

22  aware of normal hazards and take appropriate precautions" are unaffected by her mental

23  impairments.  *Id*.  On the other hand, her "ability to maintain attention and concentration for

24  extended periods,"  "ability to work in coordination with or proximity to others without being

25  unduly distracted by them," and "ability to accept instructions and to respond appropriately to

26  criticism from supervisors" are compromised for 30% of an 8-hour day.  *Id*.

27        Moreover, Cicarell did explain the basis for his opinions.  He explicitly stated that his

28  opinions were based on his "progress and office notes." (Tr. 890) Cicarell explained that Tyner

1   would be absent from work five or more days per month due to her mental impairment because

2   her symptoms increase when she is in close proximity to others.  (Tr. 891)  She would be off-

3   task more than 30% of the time during an 8-hour day because being around other people

4   exacerbates her feelings of anxiety.  (Tr. 891)

5          The court further finds that Cicarell's progress notes are consistent with his assessment

6   of Tyner's functional limitations.[2]  Cicarell treated Tyner approximately 13 times between

7   March 22, 2017 and March 26, 2018.  (Tr. 1056, 1059, 1063, 1066, 1069, 1072, 1075, 1078,

8   1081, 1084, 1086, 1218, 1240)  He had the opportunity to interview her and observe her

9   symptoms over an extended period of time.  *Id.*  Tyner often was oriented and coherent, but

10  there were also times when she experienced anxiety attacks and was unable to maintain focus.

11  *Id.*   Cicarell's opinion of Tyner's functional limitations was not brief, conclusory, or

12  unsupported.  *See, e.g., Bowers-Crawford v. Acting Comm'r of Soc. Sec. Admin.*, 291 F. Supp.

13  3d 912, 920-921 (D. Ariz. 2017)  (ALJ could not discount treating physician's opinions as

14  "quite conclusory, providing very little explanation of the evidence relied on in their formation"

15  where the opinion was supported by the physician's examination notes and presumably

16  informed by a treating physician's continuing relationship with his patient.).

17         The ALJ further stated that Cicarell "appeared to rely quite heavily on the subjective

18  report of symptoms and limitations provided by the claimant."  (Tr. 25)  (citing (Ex. 9F/6))  The

19  court finds that the ALJ's criticism is misplaced.  First, the court notes that when a patient

20  complains of psychological symptoms, the best source of information about the patient's

21  emotional state is often the patient herself.  *See Bams v. Astrue*, 2013 WL 942743, at *5 (W.D.

22  Wash. 2013)  ("Much of the evidence in a patient diagnosed with a mental disorder will be

23  based on the patient's subjective reporting."), report and recommendation adopted, 2013 WL

24  942722 (W.D. Wash. 2013);  *see also Poulin v. Bowen*, 817 F.2d 865, 873 (D.C.Cir. 1987)

25  ("[U]nlike a broken arm, a mind cannot be x-rayed . . . .").  It would be unreasonable for a

26

27         [2]  The court recognizes that some of these examinations took place after Cicarell wrote
28  his opinion on July 18, 2017. (Tr. 888-891)  The court finds nevertheless that Cicarell's opinion
    is supported by the medical record as a whole.

1   physician to ignore a patient's assessment of her own symptoms and the circumstance under

2   which those symptoms manifest themselves.  A physician should not, however, base his

3   assessment of a patient's limitations exclusively on that patient's subjective statements, and

4   there is no indication that Cicarell did so here.

5       A well-trained physician will also "attend to detail and subtlety in behavior, such as the

6   affect accompanying thought or ideas, the significance of gesture or mannerism, and the

7   unspoken message of conversation." *Srail v. Colvin*, 2015 WL 1849563, at *3 (W.D. Wash.

8   2015).  "Although anyone can have a conversation with a patient, appropriate knowledge,

9   vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status

10  examination,'" which is considered an *objective*, rather than a *subjective* source of information.

11  *Id*.  Cicarell's progress notes indicate that he did not simply accept Tyner's subjective

12  complaints uncritically.  He also conducted a Mental Status Exam at nearly every meeting with

13  her. (Tr. 1057, 1060-61, 1064, 1066-67, 1069, 1072, 1075, 1078-79, 1081-82, 1086-87, 1218-

14  19, 1241)  It therefore cannot be said that his evaluation of Tyner's functional limitations was

15  based primarily on her subjective complaints. *See, e.g.*, *Castilleja v. Colvin*, 2016 WL 6023846,

16  at *5 (E.D. Wash. 2016)  ("[T]here is no indication in the record that Dr. McClelland relied on

17  Ms. Castilleja's description of her symptoms more heavily than his own clinical observations.").

18  The court further suspects that Cicarell's evaluation of the extent of Tyner's functional

19  limitations was informed in no small part by his direct observation of her "hysterically crying"

20  on April 18, 2017.  (Tr. 1059)

21      In his response brief, the Commissioner argues that while Cicarell stated that his opinion

22  was informed by his "progress and office notes," he did not identify specific places in the

23  treatment record that supported his conclusions. (Doc. 24, p. 21)  The Commissioner maintains

24  that "[t]his lack of explanation and support is an appropriate reason for discounting the weight

25  given in a medical opinion." (Doc. 24, p. 21)  The ALJ, however, did not explicitly say that this

26  was one of the reasons why she discounted Cicarell's opinion, and the court "may not affirm

27  the ALJ on a ground upon which [she] did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010

28  (9th Cir. 2014).  Assuming without deciding that the ALJ did mean that when she said that

1  Cicarell "provid[ed] very little explanation of the evidence relied on in forming his opinion,"
2  the court finds that the ALJ's criticism is misplaced.

3      The Commissioner notes correctly that a medical opinion that is supported by specific
4  relevant evidence should be given more weight than one that is not.  The court finds, however,
5  that while the lack of specific citations to the record is important in general, it does not provide
6  a legitimate reason for discounting Cicarell's opinion and adopting the opinion of the consulting
7  physician, Tawnya Brode.  Brode's report was similarly lacking in specific citations.  (Tr. 24)

8      The ALJ stated that she adopted Brode's findings "because they are consistent with the
9  evidence received *subsequent* to her review."  (Tr. 24) (emphasis added)[3]  She did not adopt
10 them because Brode supported her opinions with specific citations to the record.  Brode did not
11 do that.  In fact, it would have been impossible for her to do so because the ALJ found that they
12 were consistent with the medical records generated *after* Brode submitted her opinion.  (Tr. 24)
13 Brode should not be faulted for failing to cite specific medical records that she did not see, but
14 if the ALJ found Brode's opinion reliable based on its consistency with the medical record as
15 a whole and not because she made specific citations to that record, then she should have
16 evaluated Cicarell's opinion in the same way.  She should not have penalized Cicarell for failing
17 to do that which Brode did not do either.

18     The Commissioner further argues that the medical record does not support the functional
19 limitations that are described in Cicarell's opinion.  (Doc. 24, p. 21)  For example, Cicarell
20 opined that Tyner "would be unable to understand and remember very short and simple
21 instructions for 20 percent or more of the workday . . . and unable to maintain attention and
22 concentration for more than 30 percent of the workday . . . ."  *Id*.  These findings, the
23 Commissioner maintains, are inconsistent with the fact that "his own treatment records
24 consistently documented intact cognition, memory, attention, and concentration, a friendly
25 affect, and no overt signs of marked anxiety or depression. . . ."  *Id*.

26

27     [3] Presumably the ALJ said this because Brode gave her opinion on  October 29, 2016,
and Tyner's amended alleged onset date was January 6, 2017, more than two months later.  (Tr.
28 20, 84-85)

One might suggest that the Commissioner finds an inconsistency here because he is not a medical professional and is not qualified to discern what signs and symptoms should be expected in a person with the functional limitations identified by Cicarell.  *See, e.g., Cox v. Colvin*,  2014 WL 6882390, 5 (C.D.Cal. 2014)  ("Absent expert medical assistance, the ALJ could not competently translate the medical evidence into a residual functional capacity assessment.").  In the alternative, it could be that the Commissioner finds an inconsistency because he fails to understand Tyner's functional limitations.

When Tyner is stressed by being in close proximity to others, or presumably by the pressures of working in a competitive environment, her ability to understand and remember instructions and her ability to maintain attention is compromised.  It is not compromised all the time, just 20% or 30% of the time.  Accordingly, it is not surprising or inconsistent that Tyner should display "intact cognition, memory, attention, and concentration, a friendly affect, and no overt signs of marked anxiety or depression" most of the time, particularly when she is in familiar surroundings with medical professionals that she knows and trusts.  She does not, however, consistently display this level of emotional control.  (Doc. 24, p. 21)  Cicarell observed Tyner "hysterically crying" and "crying, lying on the floor" on April 18, 2017 and March 26, 2018 respectively.[4]  (Tr. 1059); (Tr. 1240)  At other times, she reported "I still don't feel right,"  "I feel moody, depressed," "I'm feeling anxious and restless," "I'm a little better but, I'm still irritable," "I have no ambition," and I'm "[not] so good."  (Doc. 1063, 1066, 1072, 1075, 1218)  The court finds that Cicarell's opinion of Tyner's functional limitations is not inconsistent with the medical record.

The Commissioner observes that when Cicarell completed his assessment, "he had seen Plaintiff on only five occasions, during a 14-week period." (Doc. 24, p. 22)  The Commissioner argues, therefore, that Cicarell's opinion should not be accorded the type of deference normally accorded a treating source, who usually has a "detailed, longitudinal picture of a claimant's

---

[4]  The court acknowledges that Cicarell's opinion was written on July 18, 2017.  (Tr. 888-891)

1    impairments." (Doc. 24, p. 22) (punctuation modified)  The ALJ, however, did not make this

2    argument, and therefore the court cannot entertain it.  *Trevizo v. Berryhill*, 871 F.3d 664, 675

3    (9th Cir. 2017).  Moreover, the court observes that even if Cicarell only saw the plaintiff on five

4    occasions before submitting his opinion, that is five more times than Brode saw him.

5         The ALJ improperly discounted the opinion of Tyner's treating physician.  "When the

6    ALJ improperly ignores or improperly discounts significant and probative evidence in the

7    record favorable to a claimant's position, such as an opinion from an examining or treating

8    doctor, the ALJ thereby provides an incomplete residual functional capacity (RFC)

9    determination."  *Recknagle v. Berryhill*, 2018 WL 5624187 at *4 (W.D. Wash. 2018)

10   (punctuation modified), *report and recommendation adopted*, 2018 WL 5619204 (W.D. Wash.

11   2018).  And, the vocational expert's testimony in reliance on that RFC is not substantial

12   evidence that the claimant is able to work.  *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012).

13   The ALJ's decision in this case is not free from legal error and not supported by substantial

14   evidence.

15        Ordinarily, if the Commissioner is reversed, the court should remand for further

16   administrative proceedings.  The court may, however, remand for payment of benefits if "(1)

17   the record has been fully developed and further administrative proceedings would serve no

18   useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting

19   evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited

20   evidence were credited as true, the ALJ would be required to find the claimant disabled on

21   remand."  *Garrison v. Colvin*,  759 F.3d 995, 1020 (9th Cir. 2014).

22        Here, all three requirements are fulfilled.  "The record has been fully developed and

23   further administrative proceedings would serve no useful purpose."  *Garrison*,  759 F.3d at

24   1020.  As the Ninth Circuit observed in *Garrison*, "our precedent and the objectives of the

25   credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to

26   have a mulligan qualifies as a remand for a 'useful purpose' under the first part of credit-as-true

27   analysis."  *Garrison v. Colvin*,  759 F.3d 995, 1021-1022 (9th Cir. 2014).

28

Second, the ALJ failed to provide specific and legitimate reasons for discounting the opinion of Tyner's treating physician, Cicarell. Third, if Cicarell's testimony were credited as true, Tyner necessarily would be found disabled. Cicarell opined the Tyner is unable to stay on task for 30% of an 8-hour day and would miss five or more days of work each month. And the vocational expert opined that such a person would not be able to work. (Tr. 52-53)

All three parts of the *Garrison* test are fulfilled. Furthermore, the court has examined the entire record and finds no reason to seriously doubt that Tyner is disabled. *See Garrison*, 759 F.3d at 1022-23. Accordingly, this case will be remanded for payment of benefits. *See also Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.").

IT IS ORDERED that the final decision of the Commissioner is reversed.   The case is remanded for payment of benefits.

The Clerk of the Court is directed to prepare a judgment and close this case.

DATED this 23rd day of July, 2020.

*Leslie A. Bowman*
Leslie A. Bowman
United States Magistrate Judge